THE STATE OF VERMONT *v.* THE TOWNS OF WILLISTON, ESSEX, JERICHO, AND UNDERHILL.

*Jurisdiction of the county court over the erection of bridges between towns.*

The county court, so far as regards its jurisdiction over the subject of the establishment of roads and bridges is a court of limited jurisdiction, and can act only in the manner and to the extent prescribed by the statute on those subjects.

Neither the commissioners nor the county court have any authority to prescribe the expense, the materials or the manner of erection of a bridge. The responsibility of complying in these respects with the wants of their citizens, and the public generally, rests upon the towns bound to build the bridge, and there is no limitation to the exercise of their discretion in relation to these matters, except that the bridge must be such as the convenience and safety of the public require.

A petition having been duly presented to the county court for the establishment of a bridge between two towns, commissioners were appointed by the court, who reported, recommending the erection of a bridge according to a plan contained in the report, specifying its size, materials and mode of construction. The report also named the towns which should contribute to the expense of building the bridge and their respective proportions of contribution; and also recommended that the petitioners should indemnify these towns against all expense of its construction exceeding a certain sum. The county court accepted this report and ordered that the bridge be established and built, as specified therein, by the towns named in the report, and that the petitioners file a bond in court to those towns to indemnify them according to the recommendation of the commissioners, which last order was complied with. In an indictment against these towns for neglecting to build the bridge — *Held,* that the county court exceeded its jurisdiction in making such an order, and that the order was wholly void.

INDICTMENT for not building a bridge according to an order of the county court for Chittenden County.

The facts in the case are sufficiently set forth in the opinion of the court.

Numerous questions arose at the trial in the county court, but under the decision of the court only one is material, and that is fully stated in the opinion.

The county court for Chittenden County, at the November Term, 1857,—BENNETT, J., presiding, — ordered a verdict of guilty *pro forma* against all the respondents, to which they severally excepted.

After the verdict and before sentence, the respondents moved in arrest of judgment on account of the insufficiency of the indictment, and the proceedings in the case, to warrant any judgment or sentence thereon against either of the respondents. The court overruled this motion, to which the respondents also severally excepted.

*George F. Edmunds,* for the respondents.

The indictment and order are wholly and fatally defective in the fact that the order in question required the towns to build and maintain a bridge of a specific form and description, with a prescribed and precise plan, construction and foundation, and with a certain specified waterway.

We deny that either the commissioners, or the court, had any power to make such an order; and we insist that the respondents might lawfully refuse obedience to it.

The jurisdiction and powers of the court and commissioners are created solely by statute; they are limited by statute; the mode and extent of their exercise is prescribed by the statute; and if they order that to be done which the statute gives them no authority to order, the command is void *in toto* ; *Walker* v. *Mosely,* 5 Denio 102; *Embury* v. *Conner,* 3 Comstock 511; *Harrington* v. *The People,* 6 Barb. 607.

The statute does not authorize the signers of the original petition to the selectmen to require any particular sort of a bridge, but only " *a bridge.*" The specific kind of bridge is left wholly to the selectmen, who are, of course, bound to erect such a bridge as will answer the public wants. So when the application to the selectmen is refused, the statute authorizes the county court to appoint commissioners, whose duties are specified, but among them is not that of prescribing the form, materials and expense of the bridge, but merely to decide whether in their opinion *a* bridge is needed, and if so, what towns ought to pay for it, and in what proportions.

The county court are authorized by statute simply to accept or reject the commisioners' report, and by their order to establish " such bridge," and to settle the proportion of the expense among the several towns.

The whole proceedings from beginning to end are in behalf of

The State of Vermont *v.* Williston et als.

the public. The statute prescribes inquiries and decisions *just so far as the public has need, and no farther.* When that is done the statute is satisfied, and the tribunal has exhausted its functions.

No power being conferred to make such an order as the one now sought to be enforced, it is *void*; *Braintree* v. *County Commissioners*, 8 Cush. 546; *Round* v. *Mumford*, 2 R. I. 154; 14 Barb. (N. Y.) 405; *Webb* v. *Rocky Hill*, 21 Conn. 468.

*E. R. Hard,* State's Attorney, and *Roberts & Chittenden*, for the prosecution.

PIERPOINT, J. This is an indictment against the respondents for not building a bridge across Onion River, at a place called Chittenden's Ferry, where said river is the dividing line between said towns of Williston and Essex, according to an order of the Chittenden county court made at its September Term, 1852.

The indictment alleges that a petition was presented to said county court, praying for the appointment of commissioners to inquire into the necessity of building a bridge across Onion River, between the towns of Williston and Essex, and if they found the bridge necessary, to determine the proportion that each town should contribute towards the building and keeping the same in repair; that said court appointed commissioners, who made their report recommending the erection and construction of a bridge across said river at the place indicated in the petition, according to a plan set forth in said report, and requiring the petitioners to indemnify the towns, made liable to erect and construct said bridge, against all cost and expense thereof exceeding the sum of six thousand dollars; and that in the opinion of said commissioners the towns of Jericho and Underhill would be particularly benefited by the erection and construction of such bridge, and also fixing the proportion for each of said four towns to pay; "that said commissioners further reported to said court, that said bridge be a covered bridge, with a single track twenty-two feet wide in the clear, with two arches resting on two abutments and one pier, to be constructed of stone, the abutments to be well imbeded in timber basements in the banks of the river on either side, and the pier

to be well based upon piles well and properly driven into the bed of the river, or upon a good and sufficient timber platform properly sunk into the bed of said river and thoroughly rubbled about the base with rubble stones, with a water-way of at least two hundred and eighty feet wide under said bridge, exclusive of a string from the south abutment to the high bank on the Williston side;· the pier to be fifty-two feet in length at its base and twenty-six feet at the top, the slant at the up stream end of the pier, and to be eleven feet wide at its base and seven feet wide at the top, and to be at least twenty-five feet high; the abutments to be twenty-six feet long on the top and thirty feet long at the base, with wings at each end sufficient to protect the embankment of earth, and to be at least twenty-three feet high, said abutments and pier to be well laid and thoroughly constructed. The superstructure of said bridge to be of good and suitable sound timber, and in every particular to be well and properly constructed;" that at the said September Term, 1852, the said county court accepted the report of said commissioners, and ordered "that said bridge be established and built as specified in said report; that said four towns should contribute to the expense of making and repairing said bridge in the proportion specified in said report, and that the petitioners should indemnify said towns as specified in said report, by filing a bond in said court for that purpose;" and that said bond was so filed, at said term, to the satisfaction of said court.

It appears from the bill of exceptions, that on the trial a number of questions were raised by the respondents, which the court decided against them, and after verdict they moved an arrest of the sentence, on the ground that the " indictment and proceedings will not and do not warrant any judgment or sentence thereon against either of the defendants." The motion in arrest was overruled *pro forma.*

As the questions arising on the motion in arrest underlie those raised on the trial, and involve the validity of the proceedings of the county court which are set out in the indictment as the foundation on which it is based, we will first consider them.

It is insisted on the part of the respondents, that the order of the county court requiring the erection of the bridge, is void for

the reason that the court in prescribing the form and dimensions of the bridge, the materials to be used and the workmanship of its construction, exceeded its jurisdiction.

That the county court, in regard to its jurisdiction over the subject of roads and bridges, is to be considered a court of limited jurisdiction, we think must be conceded. Exclusive jurisdiction over the subject of bridges between two towns (as of most matters relating to roads and bridges) is given in the first instance to the selectmen of the towns, and it is only in case of application to them and their refusal or neglect to act for the space of six months, etc., " *and in no other case*," that the county court can take jurisdiction of the subject. And when it has obtained jurisdiction, it can exercise it only in the manner and to the extent prescribed by the statute. Its proceedings are to be judged by the same rules that would be applicable, if it was a tribunal created for this sole purpose, and had no authority or jurisdiction except such as is conferred by the statutes relating to roads and bridges.

Treating it then, so far as this subject is concerned, as a court of limited jurisdiction, do the facts alleged in the indictment show an attempt on the part of the commissioners and of the county court to exercise an authority not conferred by the statute ?

The authority of the county court in cases like that now under consideration, is given by the 45th, 46th, 47th, 48th and 49th sections of the 22d chapter of the Compiled Statutes. The 45th section authorizes the application to the county court under certain circumstances. The 46th section *requires* the court to appoint commissioners, and directs the mode in which they shall proceed, and the duties they shall perform, that is, " they shall inquire into the convenience and necessity of the bridge, and the place where the same ought to be erected, and what will be a just proportion of the expense of erecting and repairing such bridge, for each town to pay." The 47th section authorizes the commissioners to inquire whether any adjoining towns will be particularly benefited by such bridge, and what proportion of the expense any such town ought to pay. These last two sections determine the nature and *extent* of the authority conferred on the commissioners, and as the county court can act in the matter only through the instrumentality of commissioners, they also determine the nature

and extent of the power of the county court. The 48th section directs the commissioners to make report of their doings. The 49th section authorizes the county court to reject the report, or accept it in whole or in part, and establish and order the erection of such bridge, and settle the proportion that each town shall contribute to the expense of making and repairing the same.

By the statute, the court have authority to order that only to be done, which the commissioners have by the statute the power to inquire into and report upon, and in regard to which the parties interested have the right to be heard before the commissioners. The court, it is true, can not be bound by the report, but may reject it in part, or accept it in part, and may reject it on the ground that the commissioners have not reported upon all the matters within their jurisdiction that the court may think they ought to have acted upon, or if the court should think that the commissioners in a part of their report have acted unwisely, it may reject that part of the report and accept the remainder, and make the necessary orders to carry it into effect, but the court can not properly include within its orders any subject matter that the commissioners had not jurisdiction of (except the time within which the order is to be complied with, and the manner of enforcing it, which matters are exclusively within the jurisdiction of the court).

In no part of the statute relating to this subject is any allusion made to the kind of bridge to be erected, or the amount of its expense. No authority is given to the commissioners or the court to pass upon either of these questions, any further than to determine the relative proportion which each town shall pay, and that is to be determined by the relative benefit to be derived from the bridge, and not by the amount of its expense.

The duty of laying out, establishing, building and keeping in repair such highways and bridges in the several towns, as the convenience of the inhabitants and the public good require, is by the statute imposed on the several towns through the agency of their officers, and the sole object of the legislature in conferring jurisdiction of the subject in certain cases on the county court, seems to be to compel the towns to discharge that duty, when upon proper application they neglect or refuse to do it voluntarily,

The State of Vermont *v.* Williston et als.

by providing a method by which such roads and bridges, as the public convenience and necessity require, may be laid out and established, and the time fixed within which the towns shall be required to discharge their duty by building and opening them for public travel, but when a road or bridge is established by the order of court, and the time fixed as aforesaid, the rights and duties of the towns in working or building it within such time, are the same in all respects as they would have been if such road or bridge had been laid out or established by their selectmen.   The county court have no jurisdiction over the manner in which that duty shall be discharged (except in cases coming under·the 54th section, relating to the grading of hills).   All the towns are by law required to do, is to make a road or bridge that shall be safe and convenient for public travel, and such as the public necessities require, but the form, material, and manner of its construction, are left to the judgment and discretion of the town or towns on which this duty is imposed, the only limitation being that it shall be so done as to be safe, sufficient, and convenient for the public use, and we are unable to see any objection to thus leaving the subject to the towns. They are certainly the parties most interested in this branch of the business.   They are to perform the work and pay the expense ; they are responsible for its durability and safety; if it fail they are bound to rebuild it ; if it is insufficient they are subject to indictment, and the expense of making it sufficient ; if an injury results from any defect in the plan, materials, or workmanship, they are alone responsible.   It would seem that in view of this responsibility, the towns clearly should have the right to determine the character of the structure for which they are so made liable.   If the court have the right to control the towns in this respect by their order, then the towns are bound to comply strictly with it, and can have no discretion on the subject, and when a town or towns have erected a bridge in all respects as directed by the order of the court, if the bridge should fall or an injury happen solely in consequence of a defect in the plan, or the insufficiency of the materials so ordered by the court, it would be clearly unjust to make the towns responsible for it.

We think, therefore, that the county court have no power to order a bridge constructed upon any given plan, and to be built

in any particular manner, or of any specified materials or work
manship, and if the county court in the case under consideration,
made an order to that effect, we think it clear that it exceded its
jurisdiction.

The commissioners in their report recommended that a bridge
should be built upon the plan and in the manner therein set forth,
specifying with great particularity how it should be done, but as
the court had no power to order the bridge constructed as pre-
scribed in the report, it had the right and it was its duty, under
the 49th section, to set aside the report, either in whole or the
objectionable part of it, and accept it as to the remainder. The
proceedings as set out in the indictment, do not show that any
part of the report was rejected, but do show that the report
of the commissioners was accepted, and approved, and the
bridge established and ordered to be "built as specified in said
report."

We think that no fair construction can be put upon this order
that will make it other than an order to build such a bridge as is
specified and recommended in the report of the commissioners,
and that in making it the county court exceeded its jurisdiction,
and that the order in this respect is null and void. The question
then arises as to the effect of this order upon the orders establish-
ing the bridge, limiting the time of its construction and fixing the
proportion of the expense to be paid by the respondents, all of
which are within the jurisdiction of the court. Is this order so
separate and disconnected from the other proceedings and orders
in the case, that it can be disregarded and treated as a nullity,
without in any manner operating upon the other proceedings, or
affecting the rights of any of the parties thereto, or of the public?
Perhaps the court, in a case like the one under consideration,
might make an order that would be so entirely without its juris-
diction and so wholly disconnected from the appropriate subject
matter of its action, as to preclude the idea that the objectionable
order, or the subject matter of it, had any influence upon the
actions or judgments of the parties, commississioners or court,
so far as they were acting within the jurisdiction of such court.
And in such a case it might be difficult to give a satisfactory rea-
son for holding that such invalid order should invalidate all other

The State of Vermont *v.* Williston et als.

proceedings, but whether such a case might or might not arise, it is not necessary for the court now to determine, for it is quite clear that the objectionable order in this case can not be brought within any such rule. It is possible that if the commissioners had not entertained the idea that they had the power to specify, and the court to order, the kind of bridge to be erected, they would not have reported in favor of establishing it, and it is apparent from the report, that they did not think it just, and did not intend to make the towns chargeable beyond the sum of six thousand dollars, and that they did not intend to require of the petitioners the payment of a larger sum than the excess of the cost of such a bridge, as they described, over the sum of six thousand dollars, and the same may be said of the county court in accepting the report and making its orders. The petitioners undoubtedly acted on the same idea in concluding to execute a bond to indemnify the towns against the excess of the expense over the six thousand dollars. If the county court had rejected the report as to this order, and accepted it as to the remainder, it is quite probable the petitioners would have refused to execute the bond, for in that case, the kind of bridge and its expense, would be in the discretion of the towns whose liability could not exceed the sum of six thousand dollars, and the petitioners would be, in a measure, at the mercy of the towns, a position that in view of the feeling that is sometimes engendered in proceedings of this kind, they might not regard as quite safe, or be willing to occupy. It is to be borne in mind that the action of the petitioners, in executing a bond in these cases, is entirely voluntary, and the court have no power to order or compel the execution of such a bond. All it can do is to make the execution of such a bond a condition upon which the report of the commissioners will be accepted. If the bond be executed and the report accepted, the petitioners would probably be holden on their bond, and the towns would have no cause of complaint. If the court had the power to compel the execution of such a bond, it ought certainly to have the power of determining the kind of bridge to be erected, and to limit the expense, but it is quite clear it does not possess the power to do either.

To hold in a case like the present, after the execution of a bond

by the petitioners, that the order prescribing the kind of bridge to be erected is void, and the orders in other respects binding, might have the effect to discharge the petitioners from their liability on their bond, and throw the whole expense on the towns, a result not contemplated by the parties, commissioners, or county court, and one that might do great injustice.

We are therefore of the opinion that the order of the county court, for not complying with which the respondents are indicted, is void.

As this view of the question disposes of the whole case, it is not necessary for the court to pass upon the other questions raised and discussed at the hearing.

The judgment of the county court, overruling the motion in arrest, is reversed, and sentence arrested.