RUTLAND RAILWAY, LIGHT & POWER COMPANY *v.* CLARENDON POWER COMPANY.

October Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 20, 1912.

*Eminent Domain—Injunction Against—Equity Jurisdiction— Property Subject to—"Public Use"—Property Already Devoted to—Public Necessity—Nature of Question—Legislative Power—Public Service—Test of Power to Regulate— Monopoly—Jurisdiction of Commissioners in Condemnation Proceedings—Defences.*

An injunction restraining condemnation proceedings may be granted only where the ground of the injunction cannot be urged as a defence in those proceedings.

Property already devoted to a public use, whether acquired by condemnation or purchase, cannot be taken for another public use without express, or necessarily implied, legislative authority.

The test of whether a business is affected with a public use so that the state may regulate it, is whether the undertaking involves a matter of public necessity, and is monopolistic in character.

The existence of the power to regulate a public service corporation is not determinative of the validity of a grant to it of the right to exercise the power of eminent domain.

In determining whether property sought to be taken by the exercise of the power of eminent domain is already devoted to a "public use," that term should have the meaning given it in the law of eminent domain.

In condemnation proceedings, the question of the public necessity is one of fact.

The obligation of a public service corporation to serve all on equal and reasonable terms, to refrain from granting special privileges, and faithfully to perform its other public duties springs from the character of the undertaking, independently of statutory provisions on that subject.

As affecting the exercise of the power of eminent domain, though the Legislature cannot make that public which is in essence private, it can, by charter restrictions and provisions, make private what would otherwise be public.

Whether a given community shows a demand for electric current sufficient to warrant the Legislature in granting a corporation the power of eminent domain to supply it is a legislative and not a judicial question.

In the absence of charter limitations, a corporation that engages in the business of generating and distributing electric currrent for general sale for power purposes devotes its property to a public use as much as if it had limited its business to the sale of current for lighting purposes, and that business is affected with a public interest within the meaning of both the law of regulation and the law of eminent domain.

Under the provision in the charter of a power company that, if it becomes necessary for the company to take the land or water rights of another, it may, if the parties disagree on the question of necessity, apply to two judges of the Supreme Court, who shall appoint commissioners to determine the necessity thereof and the

damages occasioned thereby, the jurisdiction of such commissioners is confined to the questions of the necessity of the taking and the damages occasioned thereby, and so the landowner cannot urge in defence before those commissioners that the property is already devoted to a public use.

APPEAL IN CHANCERY. Heard on demurrer to the bill, at the September Term, 1911, Rutland County, *Taylor,* Chancellor. Demurrer overruled, *pro forma,* and bill adjudged sufficient. The defendant appealed. The opinion states the case.

*T. W. Moloney, F. S. Platt* and *Clarke C. Fitts* for the orator.

A bill in equity will lie to restrain the taking of lands by the exercise of eminent domain under the circumstances set forth in this bill. *White River Turnpike Co.* v. *C. V. Ry. Co.,* 21 Vt. 590; *C. V. Ry. Co.* v. *Woodstock R. Co.,* 50 Vt. 452; *Deerfield River Co.* v. *Wilmington Power Co.,* 83 Vt. 548; *Hatch* v. *C. V. Ry. Co.,* 25 Vt. 61; *Post & Flagg* v. *Rutland Canadian R. R. Co.,* 80 Vt. 351; *Littleton Bridge Co.* v. *Pike,* 72 Vt. 7; *Goodsell* v. *Rutland Can. R. R. Co.,* 74 Vt. 206; 2 Lewis, Em. Dom. §901; *Mountain Park Terminal Railway Co.* v. *Field et al.,* 88 S. W. 897; *Niemeyer & Daragh* v. *Little Rock Junction Railway,* 43 Ark. 120; *Brown* v. *Gerald,* 100 Me. 351, 109 Am. St. Rep. 526.

The orator is, itself, a public service corporation and the water power in question is already devoted to a public use and cannot be taken by the defendant for a similar use in the absence of legislative authority express or necessarily implied. *Barre R. R. Co.* v. *Montpelier & Wells River R. R. Co.,* 61 Vt. 1; *New York Cent. etc. R. R. Co.* v. *Met. Gas Lt. Co.,* 63 N. Y. 326; *New York Cent. R. R. Co.* v. *Dailey,* 57 Misc. 311; *Spring City Gas Lt. Co.* v. *Penn. etc. R. R. Co,* 167 Pa. 6, 31 Atl. 368; *Scranton Gas etc. Co.* v. *Northern Coal etc. Co.,* 192 Pa. 80, 43 Atl. 470; *Scranton Gas etc. Co.* v. *Coal etc. Co.,* 145 Pa. St. 21, 23 Atl. 461; Lewis, Em. Dom., 3rd Ed., §443.

The use for which the property is attempted to be taken is not a public use, and the real purpose of defendant is to devote the property to a use wholly private, and condemnation is not authorized nor warranted. *Avery* v. *Electric Co.,* 75 Vt. 235;

*Tyler* v. *Beacher*, 44 Vt. 648; *In re Barre Water Company*, 62 Vt. 27; *Deerfield River Co.* v. *Wilmington Power Co.*, 83 Vt. 548.

*Fred C. Davis, J. C. Jones* and *John W. Gordon* for the defendant.

''A bill in equity will not lie to enjoin proceedings for condemnation for the reason that the mere taking of such proceedings does no injury to property and for the further reason that the grounds relied upon for an injunction may be urged in defence of the proceedings. The making of a public improvement cannot be enjoined on a ground that it is unnecessary or is being made to further private ends. 2 Lewis, Em. Dom., §646; 5 Pom. Eq. Jur., §466; 1 High on Injunctions, 644-645; *Doughty* v. *Somerville etc. Co.*, 3 Hals. 629, 51 Am. Dec. 267; *People* v. *Board of Assessors*, 39 N. Y. 81; *Baldwin* v. *Bangor*, 36 Me. 518; *Dunham* v. *Hyde Park*, 75 Ill. 371; *Worcester* v. *Ladeside Mfg. Co.*, 174 Mass. 299; *Fuller* v. *Caldwell*, 6 Allen 503; *Brown's Appeal*, 66 Pa. St. 155; 1 High on Injunctions, §29; *C. & N. W. Ry. Co.* v. *Chicago*, 151 Ill. 348; *C. R. T. & P. Ry. Co.* v. *Chicago*, 143 Ill. 641; *Walker* v. *Winkler et al.*, 4 Ill. 179; *Laplant* v. *Marshalltown*, 134 Ia. 261; *A. & W. P. R. R. Co.* v. *Redwing*, 123 Ga. 737; *Western Md. R. R. Co.* v. *Patterson*, 37 Md. 125; *Allen* v. *Pullman Palace Car Co.*, 139 U. S. 658; *Key* v. *N. Y. & H. R. Co.*, 6 Hun. 24; *Shelton* v. *Platt*, 139 U. S. 591; *Dawes* v. *Chicago*, 11 Wall. 108; *Union Pacific Ry. Co.* v. *Cheyenne*, 113 U. S. 516; Cooley on Taxation, 536; 3 Greene's N. J. Ch. Rep. 429.

The property in question is not held by the orator for a public use within the meaning of the law of eminent domain. *Olmstead* v. *Morris Aqueduct*, 47 N. J. L. 311; *Re Eureka etc. Co.*, 96 N. Y. 42; *Steamers* v. *Davenport*, 114 Ia. 432, 54 L. R. A. 859; *Brown* v. *Gerald*, 100 Me. 372; *In re Allen*, 82 Vt. 375; *Matter of B. & A. R. Co.*, 53 N. Y. 674; *Matter of N. Y. etc. R. R. Co.*, 63 N. Y. 326; *Matter of Rochester Water Com'rs*, 66 N. Y. 413; *Matter of Buffalo*, 68 N. Y. 167; *P. P. & C. I. R. Co.* v. *Williamson*, 91 N. Y. 552; *Matter of N. Y. etc. Ry. Co.*, 99 N. Y. 13; *Avery* v. *Vermont Electric Co.*, 75 Vt. 235; *Eldridge* v. *Smith*, 34 Vt. 484; *Tyler* v. *Beacher*, 44 Vt. 648; *Village of Swanton* v. *Town of Highgate*, 81 Vt. 152; *Blanchard* v. *City of Barre*, 77 Vt. 420; *Currier* v. *Rosebrooks*, 48 Vt. 34; *Durkee* v. *Durkee*, 59 Vt. 70.

POWERS, J.    The orator is a corporation owning and operating an electric railway in the streets of the city of Rutland, and between that city and the village of Fairhaven.    When this bill was brought, it was completing an extension of this railway from Fairhaven to Poultney.    It also supplies electricity for lighting the streets of Rutland City, and the villages of Castleton, Fairhaven, Poultney and Hydeville, and has entered into a contract to light the streets of Wallingford.    It sells electricity to individuals in various towns in Rutland County for light and power. It owns, maintains and operates dams, storage reservoirs and power plants for the generation of the electric current required in its business.    On account of the extension of its line to Poultney and its Wallingford contract, it requires additional power, and on September 2, 1910, it purchased a tract of land of about forty-six acres, situated on Mill River, on which was an undeveloped, but valuable, water power.    This power the orator proposes to develop and utilize in its said business.    No claim is made that in any of the matters specified, the orator is outside its chartered authority.    It is this water power, together with a right of way across this land for a penstock, that the defendant, which is also a corporation authorized by its charter to manufacture and sell electric current, seeks to condemn under the proceedings herein enjoined.

The bill is demurred to; and in support of the demurrer it is insisted that the court of chancery has no jurisdiction, since the orator may avail itself of the matters set forth in the bill as a defense to the condemnation proceedings, and so has an adequate remedy at law.    This objection the orator does not meet when it points to the authorities holding that an entry under color of the right of eminent domain will, in certain circumstances, be enjoined.    For, as shown in 5 Pom. Eq., §466, restraining the condemnation proceedings is quite a different thing from restraining an actual entry thereunder.    The rule is there stated to be that no injunction lies against the prosecution of such proceedings, when the matter relied upon as a ground for the injunction may be urged as a defense in the proceedings themselves.    And it is generally so stated.    2 Lewis Em. Dom., §296; *Birmingham etc. R. R. Co.* v. *Louisville etc. R. R. Co.,* 152 Ala. 422, 44 So. 679; 15 Cyc. 987.    But if the matter so relied upon cannot be urged as a defense to the proceedings to condemn, equity has jurisdiction to enjoin the proceedings—and

4

that upon the broad ground of the inadequacy of the legal remedy.

Our attention is called to various cases of our own, wherein this jurisdiction has been exercised by the court of chancery. The question here made, however, does not appear to have been raised in those cases, and consequently they cannot be accepted as conclusive of the right so to proceed—though they might influence our decision if we regarded it as a doubtful question.

Accepting, then, the Pomeroy Rule as a correct statement of the law of the subject, we turn to a consideration of its application to the case in hand.

That property already devoted to a public use cannot be taken for another public use, without legislative authority, expressly given or necessarily implied, is the unquestioned law of this State. *Barre R. R. Co.* v. *M. & W. R. R. Co.*, 61 Vt. 1, 17 Atl. 923, 4 L. R. A. 785, 15 Am. St. Rep. 877; *Rut.-Can. R. R. Co.* v. *C. V. Ry. Co.*, 72 Vt. 128, 47 Atl. 399. And it makes no difference ·whether the property was acquired by condemnation or purchase. *Evergreen Cemetery Asso.* v. *New Haven,* 43 Conn. 234, 21 Am. Rep. 643; 15 Cyc. 614; Randolph, Em. Dom., §97..

An attempt to give a sufficiently accurate and comprehensive definition of the term ''public use'' would be a perilous undertaking. The difficulty, if not impossibility of formulating such a definition is everywhere recognized. See *In re Barre Water Co.,* 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195; note to *Grafter* v. *St. Paul etc. Ry. Co.,* 22 L. R. A. (N. S.) 1. The cases wherein the meaning of the term is judicially considered are of three classes: Those dealing with the right of eminent domain; those concerning the law of taxation; and those involving the power of legislative regulation. Each of these attributes of sovereignty, though differing from the others in essential particulars; implies a public use as a necessary condition, and one without which, it cannot be called into activity.

' In seeking out the principle on which this right of legislative regulation is predicated, Prof. Wyman, in his recent work on Public Service Corporations, gives an interesting historical study of the subject and a careful analysis of the decided cases. As a result, he makes the whole question of public use. or what is the same thing, public calling, depend upon whether the calling involves a matter of public necessity and is monopolistic in character, in view of the economic, industrial and commercial

conditions of the times. Taking monopoly as the criterion by which a given calling is to be tested, he determines its character as public or private, and classifies it accordingly. He divides monopolies into three classes: Natural, state granted, and virtual; and his conclusion is that when one engages in a business which is fairly assignable to either of these classes, his business becomes affected with a public interest, and the rights of the public therein may be protected by legislative action. and the conduct of the business regulated accordingly. That a business purely private is not subject to such regulation is plain enough. It is only when the public has an interest in it that it has any rights to be so protected. Nor is the situation changed (according to Prof. Wyman's theory) if that business, for one reason or another, becomes locally or temporarily monopolistic, as where a local merchant for the time being controls the whole available supply of a given commodity; it is still a private enterprise, and (in the respect now under consideration) free from legislative regulation or control. On the other hand, a public calling may become locally or temporarily competitive, as where two railroads come to serve the same territory; but such do not thereby lose their character as public service corporations, and they remain subject to regulation and control.

The distinction, then, between a public and a private calling inheres in the nature of the undertaking. A railroad company is engaged in a business affected with a public interest, not because it is subject to regulation; but it is subject to regulation because it is affected with a public interest. On the other hand. selling merchandise in a country store is a private enterprise not because it is free from legislative regulation, but it is free from such regulation because it is a private business.

It is upon this theory that the court based its decision in the much discussed and oft cited case of *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77, the doctrine of which in this respect has been repeatedly adhered to and affirmed.

So far as the matter of regulation of public services is concerned, this theory affords a test of public use at the same time logical, workable and satisfactory. It must be remembered, however, that the case in hand does not involve the power of regulation; we are here concerned only with the rule governing the right to condemn property already devoted to a public use. In this rule, the term ''public use'' is employed in the sense in

which it is used in the law of eminent domain, and it may be that the meaning of the term varies according to its application. We have spoken at some length upon the subject of regulation with a two-fold purpose: To meet the argument of those who say that the question of public use in condemnation proceedings depends upon whether or not the business for the benefit of which condemnation is sought is subject to legislative regulation and control; and to afford the basis of an argument by analogy. In *People* v. *Salem,* 20 Mich. 452, 4 Am. Rep. 400, Judge Cooley utters a caution against arguing from one governmental power to another, and asserts that property may be devoted to a public use with reference to one power of government, and be devoted to a private use with reference to another power of government. It was said in *Stiles* v. *Newport,* 76 Vt. 154, 56 Atl. 662, and again in *Frazier* v. *Slack,* 85 Vt. 160, 81 Atl. 161, that the "public use" involved in the law of eminent domain is not the "public use" involved in the law of taxation; and the idea that the power to regulate is not determinative of the validity of a grant of the power of eminent domain lies at the very foundation of the decision in *Tyler* v. *Beacher,* 44 Vt. 648, 8 Am. Rep. 398.

It is not necessary, however, to determine how far the analogy between the powers of regulation and eminent domain can be carried without breaking down. To this extent the analogy can be safely relied upon: In both these powers, the distinction between public and private uses lies in the character of the use. In the law of eminent domain, no less than in the law of regulation, this distinction is inherent, and corporations are to be classified according to the nature of the business in which they are engaged.

The result is that a railroad company, for instance, which everybody agrees is engaged in a public service, is a public service corporation not because the power of eminent domain may be conferred upon it; but the power of eminent domain may be conferred upon it because it is engaged in a public service. It would be a public service corporation, though the power of eminent domain was not conferred upon it.

So the business of the country merchant is purely private, but this is not so because the power of eminent domain cannot be conferred upon him; but the power of eminent domain cannot be conferred upon him because he is engaged in a purely private enterprise.

A determination of the character of a given enterprise cannot be made upon a consideration of legal principles alone. Economic conditions and the needs of the people must have attention. Without this, the power of eminent domain would lack that elasticity which is said *In re Barre Water Co.*, 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195, to be essential to the end "that it may be exercised to meet the demands of new conditions and improvements, and the ever-varying and constantly-increasing necessities of an advancing civilization."

On this subject, Judge Cooley was an acknowledged conservative. The doctrine which he laid down, and which is generally, if not universally accepted as the most accurate and satisfactory statement of the law of the subject, is as follows: "That only can be considered a public use where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience, or welfare which, on account of their peculiar character, and the difficulty, perhaps impossibility, of making provisions for them otherwise, is alike proper, useful and needful for the government to provide." Cooley Const. Lim. (6th Ed.) 655. That the public must, to some extent, be entitled to use or enjoy the property taken, not by favor but as a matter of right, is conceded. This, however, does not necessarily imply a direct participation in that particular property; it is enough if that property contributes directly to the part of the business in which the public does participate.

It is not our purpose to attempt an extended review of the cases dealing with this subject. We shall, however, make brief reference to the principal cases holding that furnishing electric power is a private and not a public use—*Fallsburgh Power & Mfg. Co.* v. *Alexander*, (Va.) 61 L. R. A. 129, 99 Am. St. Rep. 855, 43 S. E. 194; *In re R. I. Suburban Ry. Co.*, (R. I.) 52 L. R. A. 879, 48 Atl. 591; and *Brown* v. *Gerald*, (Me.) 61 Atl. 785, 70 L. R. A. 472, 109 Am. St. Rep. 526.

In the case first named, it was urged that while the plaintiff's charter did not command the performance of the company's public duties, it did recognize it as an "internal improvement company"; that it became a public service corporation and the right of public control arose from the grant of the franchise of eminent domain; and that, when the company undertook to devote its property to a public use, it became subject to public

regulations.   The court admitted the soundness of these proposi-
tions, but held that the use which the public could have of the
property was vague and uncertain, and that, by the charter, the
company could use its entire product in its own business and
for its own benefit.    It was held that in such a case the private
benefit too clearly dominates the public interest to find constitu-
tional authority for the exercise of the power of eminent domain,
and that the general laws specifying and regulating the public
duties and obligations of internal improvement companies did
not change the situation.    The court then went on to say: ''We
do not mean to say, however, that under no condition can the
right of eminent domain be conferred by the legislature in
furtherance of the establishment of plants for the generation of
electric power or other power, light or heat, where public neces-
sity requires it, and the public use or benefit is apparent, and
safely guarded.''   But the question of public necessity is a
question of fact; the public use appears from the character of
the business, and it is safely guarded for the obligation to serve
all on equal and reasonable terms, facilities and accommodations
and to faithfully perform its other public duties, springs from
the character of the business engaged in, independently of statu-
tory provisions on that subject.

To illustrate: A railroad company must afford reasonable
facilities for the transportation of persons and property, must
serve all on equal terms, must refrain · from granting special
privileges, whether there is a statute on that subject or not.   It
was so at common law.   *Fitzgerald* v. *G. T. R. R. Co.,* 63 Vt. 169,
22 Atl. 76, 13 L. R. A. 70; Beale & Wyman, Rate Regulation,
§§712-716, 719-724.   These obligations spring from the nature
of its business.   This is not saying that such a corporation could
not be so limited by its charter as to be made a private corpora-
tion.   Though the legislature cannot make that public which is
in essence private, it can, by charter restrictions and provisions,
make that private which would otherwise be public.

In the Rhode Island case, a street railway company was
denied the right to condemn land for a power house and coal
pockets at a distance of five miles from its line, on the ground
that it was for its private benefit and not for public use.   We
cannot agree that the public has no interest in the source of
supply of power for such a railroad—whether purchased, or
supplied by storage batteries, or by several stations.   The public

is interested in prompt service, in economical and reliable motive power, for larger expenses mean increased fares.   In this particular there is no difference between street and steam railways. As well might it be said that it was no concern of the public whether a trunk line railway was operated by steam generated by coal, coke, or wood, and therefore coal pockets were for private use.   Nor can the assertion that the location chosen is a matter of convenience and not necessity avail to support the decision, for the question of necessity is one of fact, and not for the court to decide.

The Maine case approves Judge Cooley's rule as above stated, but holds that supplying electric power does not come within it.   The case presents some peculiar features and it is impossible to say how far the decision may have been influenced by them.   But we cannot agree with the court's conclusion. To hold that the supplying of electric current for heat and power is not "furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare which, on account of their peculiar character, and the difficulty, perhaps impossibility of making provisions for them otherwise," or that it is not "proper, useful and needful for the government to provide"—is to close our eyes to conditions which surround us. Wherever access can be had to a transmission line, farmers are running their separators, churns, ensilage cutters, and in some cases milking machines, by this power.   In the kitchen the electric range, washing machine, and flatiron are in daily use; in the sick-room the electric pad, the electric stove, and the ozonator have become almost indispensable; the house-wife runs her sewing machine, sweeps, dusts and cleans house by electric power.   And the usefulness of this agency is constantly spreading, and the time is fast approaching when electricity will come to be (if I may borrow a phrase from Mr. Asquith's recent speech to the Miner's Federation) "the life-blood of the country's industries."   It is especially important in this State, where in spite of our disadvantages in the matter of transportation, the available water powers make possible a wide distribution of current for domestic and industrial purposes.   The Maine case is reasoned on its own peculiar facts, though it is sought to establish a general principle.   But the view taken was quite too narrow for that purpose.   The proposition that industries can provide their own power is only true in a limited sense.   It is a

matter of common knowledge that the granite industry, both in Caledonia and Washington Counties has been entirely built over since the advent of electric power, and in both localities there is at present a demand for additional power. The small dealer can now engage in the business with a chance to succeed in competition with the large operator. The industrial activity in Windham County is made possible by recent electric development and installation. The Deerfield Valley is in process of development; the Fifteen Mile Falls on the Connecticut is projected. While this very case shows that the necessities of Rutland County are not yet supplied, for with all of the resources of the orator available, the defendant finds it an attractive field to enter on a competitive basis.

The Maine court shows that there was no demand on the part of the public shown by the case. But whether a given locality shows a sufficient demand for current to warrant the grant of the power of eminent domain is a legislative and not a judicial question. *Williams* v. *School Dist.,* 33 Vt. 271. Therein the power of the legislature is coextensive with its power in the matter of taxation, which was said in *Burlington* v. *C. V. Ry. Co.,* 82 Vt. 5, 71 Atl. 826, to be, except for constitutional limitations, practically absolute. Our holding, then, is that in the absence of charter limitations, a corporation which engages in the business of generating and distributing electric energy for general sale for power purposes devotes its property to a public purpose as much as if it limited its business to the sale of current for lighting purposes. Such business is affected with a public interest, both as regards the law of regulation and the law of eminent domain.

It is apparent, that this holding goes quite beyond that in *Deerfield River Co.* v. *Wilmington Power & Paper Co.,* 83 Vt. 548, 77 Atl. 862. It puts all corporations engaged in generating electricity for general sale into one and the same class, without regard to the presence or absence of special provisions in their charters regulating the conduct of their business.

The question whether the special provisions of the defendant's charter have the effect of making it a private instead of a public service corporation is not raised or considered.

It remains to consider whether the matters set up in the bill can be urged as a defense in the condemnation proceedings.

The defendant's power of condemnation is found in §5 of its charter—No. 347, Acts of 1910.    It is there provided that if it becomes necessary for the defendant to take the land or water rights of another, it may, if the parties disagree on the question of necessity or damages, apply to two judges of the Supreme Court, who shall appoint commissioners to determine the necessity thereof and the damages occasioned thereby.    No other questions are to be submitted to these commissioners, the terms of the act circumscribe the authority of the commissioners, and it cannot be extended by implication, since it is wholly statutory. These commissioners are like those in highway cases, whose jurisdiction is held to be just what the statute specifies.    *State* v. *Williston,* 31 Vt. 153; *Alexander* v. *Montpelier,* 81 Vt. 549, 71 Atl. 720.

We cannot sustain the defendant's claim that its charter should be construed as authorizing the condemnation of this water power and rights, notwithstanding the orator's purpose to devote them to a public use.    This right is not expressly granted, nor can we say that it is granted by necessary implication.    Since the orator could not avail itself of these matters in defending against the condemnation proceedings, it follows that the jurisdiction of the court of chancery was properly invoked.

*The pro forma decree overruling the demurrer and adjudging the bill sufficient is affirmed, and the cause is remanded.*