# ESSEX COUNTY,

## AUGUST TERM, 1871.

### [ CONTINUED FROM ANTE PAGE 86. ]

---

## J. PORTER TYLER *v.* WILLIAM A. BEACHER, PATRICK FOLAN, AND JAMES WELLS.

*Exceptions. Certiorari. Practice. Eminent Domain. Constitutionality of Flowage. Acts of 1866–7–9. Legislation. Public Use. Grist-Mills.*

The statutes of 1866–7–9, relating to flowage, give jurisdiction of all proceedings under them to the county court, the same as the statutes in relation to laying out and discontinuing highways, and locating school-houses. The statutes in relation to passing of causes from that court to the supreme court upon exceptions, have by numerous decisions and a long course of practice, been held and treated not to extend to any such proceedings.

Questions arising in the course of such proceedings have been reached by petition for a writ of *certiorari, mandamus,* or other appropriate writ.

Under the constitution of this State, private property is, upon compensation made in money, subservient to *public* uses when necessity requires it, but to no other uses.

Whenever the use is public the legislature has full power to determine whether a necessity for taking for such use in any class of cases exists or not, and has the sole prerogative of determining as to the propriety of exercising the power. But the legislature has not the power to so determine that a use is a public use as to make the determination conclusive.

The attempt of the legislature to exercise the right of eminent domain, does not, therefore, settle that it has the right. The question whether the taking was for public use remains to be determined by the courts.

The exercise of the alleged right to flow the lands of the petitioner for the benefit of the grist-mill of the petitionees in this case, under the flowage acts of 1866–7–9, would not be a taking for public use within the meaning of the constitution.

The statutes of this State require owners and occupiers of grist mills to grind well and sufficiently all grain received by them for that purpose, at certain fixed rates of toll, but they are not *compelled* to receive grain for grinding against their wills; and their mills are their own *private* property, and the public have no right whatever in them or their use.

The flowage acts and constitution of Massachusetts, and the decisions of the courts of that and other States, considered and discussed.

THIS was a petition brought by the plaintiff who was the owner of a grist-mill situated on the outlet of Island Pond, in this county, under the flowage acts of 1866–7–9, to have the height to which he may keep his dam and raise the water in said pond established, and to have the defendants' damages by reason thereof assessed.

At the March term, 1870, of the court, the defendants demanded a jury trial, but the court appointed three commissioners to perform the duties required by the aforesaid acts, to which the defendants excepted.

At the first sitting of the commissioners, the defendants by their attorneys filed with them a protest in writing, that by so appearing they did not waive any objection that might be raised as to the constitutionality of said flowage acts, nor the right to try any question of fact involved by jury. The commissioners made their report to the court, finding that the grist-mill was " an undoubted public benefit," and establishing the height to which the water in said pond may be kept by plaintiff, and assessing the damage from flowage to the defendants named in the petition. The defendants objected that the acts under which said proceedings were had were unconstitutional. The court, at the September term, 1870, PECK, J., presiding, ruled otherwise, and defendants excepted. Defendants claimed the right to a trial by jury upon the question of damages, which claim was disallowed, and report accepted, and judgment rendered according to report ; to all which the defendants excepted.

*Ossian Ray* and *Henry Haywood*, for the petitionees.

*Geo. N. Dale*, for the petitioner.

When the purpose for which private property is to be taken is of a sufficient public nature, especially if it be also a necessity to the public, then the legislature has a right to appropriate the property of an individual. In the case of the *Boston and Roxbury Mill Corporation* v. *James Newman*, 12 Pick., 467, we have a case differing from this only in this: that the Mill Company built a turnpike in connection with the dam, but the right to maintain the dam independent of the turnpike is distinctly recognized

and sustained.    See also 15 Vt., 745 ; 23 Vt., 361; 22 Vt., 44 ;
22 Vt., 317 ; *Newcomb* v. *Smith*, 1 Chandler's Repts., Wis., 71 ;
*Thiur* v. *Vorghtlander*, 3 Wis., 461.

Angell on Water Courses, (ch. 12,) declares that it is well set-
tled that taking land for mill purposes is sufficiently for the public
good to authorize its being done. *Talbot* v. *Hudson*, 24 Law Rep.,
228 ; *Wolcott Woolen Manufacturing Co. et als.* v. *Jacob Upham*,
5 Pick., 292 ; *French* ⌐. *The Braintree Manufacturing Co.*, 23
Pick., 216.    See also, *Great Falls Manufacturing Co. Case*, 47
N. H., 444.

The opinion of the court was delivered by

WHEELER, J.    The statutes relating to flowage gave jurisdic-
tion of all proceedings under them to the county court, at the
sessions, the same as if the administration of those matters had
been given to any other court or board, and the same as the stat-
utes in relation to laying out and discontinuing highways, and
those in relation to locating school-houses, and some other similar
matters, have made that court at the sessions a board of authority
to administer their provisions.    The statutes in relation to the
passing of causes from that court to this, upon exceptions taken
on the trial of causes there, have by numerous decisions and a
long course of practice, been held and treated not to extend to
any proceedings of this kind.    Decisions of this court upon ques-
tions arising in the course of such proceedings have been reached
by a writ of *certiorari*, or *mandamus*, or other appropriate writ.
But this cause proceeded to a final judgment in the county court,
and the petitionees appear to have taken exceptions to the decis-
ions of that court, made in the course of the proceedings, without
any objection or question made by the petitioner as to the propri-
ety of that course, and the exceptions appear to have been allowed
by that court, and the cause passed to this court for revision, with-
out objection or question by any party, or by the court, and the
material questions of law in this case have been fully argued in
this court upon both sides without claim by either that the ques-
tions were not regularly raised.    Under these circumstances, with-
out intending to overrule any past decision of this court upon the

subject, or to introduce or encourage any new practice with reference to it, the questions have been treated by this court as the parties have treated them, and are determined as being regularly here.

The important question in this case relates to the validity of the several acts of the legislature, upon which these proceedings wholly rest. The legislature is limited in its powers by the constitution of the State, and whatever it does in excess of the limits is nugatory. The first article of the first part of the constitution declares acquiring, possessing and protecting property to be among the natural, inherent and inalienable rights of persons. The second article of the same part declares that private property ought to be subservient to public uses when necessity requires it, but that whenever taken for the use of the public, the owner ought to receive an equivalent in money. These declarations together are equivalent to a declaration that private property ought, upon compensation made in money, to be subservient to public uses when necessity requires it, and to no other uses, even though necessity should require it, and compensation should be made.

Whenever the use is public, the legislature has full power to determine whether a necessity for taking for such use in any class of cases exists or not. *Williams* v. *School Dist.*, 33 Vt., 271. And the legislature has the sole prerogative of determining as to the propriety of exercising the power it has upon the necessity that does exist in any class of cases. But the legislature has not power to so determine that a use is a public use as to make the determination conclusive. The attempt of the legislature to exercise the right of eminent domain does not therefore settle that it has the right; but the existence of the right in the legislature in any class of cases is left to be determined under the constitution by the courts. The question whether the taking in this case was for public use remains therefore to be determined here.

The judgment of the county court in this case was, in effect, that the petitioner might raise the water in Island Pond to a certain height, and that he should pay the petitionees certain sums of money for the damages which the raising of the water to that height would occasion them by flowing their lands. The acts of

the legislature, under which these proceedings have been had, provide that this assessment of damages shall be final and conclusive on the parties, their heirs and assigns, and give the petitioner his heirs and assigns forever, the right to keep up such dam as established. Gen. Stats., 1870, 954, § 4. These acts of the legislature provide for flowage in this manner, whenever it would, in the opinion of the commissioners, be of public use or benefit, and the court if required, should inquire and be of the opinion that it would be of public benefit. Ibid. 907, § 3; 954 § 3. This judgment of the county court is founded upon a finding by the commissioners, that the grist-mill of the petitioner, for the use of which he desired to raise the water, was of undoubted public benefit, and in that respect it has no other foundation. There is nothing in the case, as it is made up and furnished to this court, to show what the mill of the petitioner is, further than that it is a grist-mill. If it is a mill designed for custom grinding, there is no law to compel him or his heirs or assigns to grind for the public, or any part of the public, for any fixed toll or compensation, nor for any toll or compensation unless they choose to do it. The statutes require owners and occupiers of grist-mills to grind well and sufficiently all grain received by them for that purpose, at certain fixed rates of toll, but they are not compellable to receive grain for grinding against their will. Their mills are their own private property, subject to their own control, except as to that regulation, and the public has no rights whatever in them, or to the use of them. If the mill is for grinding grain into flour or meal for sale, it is subject to no control, except the statutes for the inspection and for the regulation of the weights and measures of such productions, and is likewise merely private property. The benefit which the commissioners have found that the raising of this water would, by supplying the petitioner's mill, be to the public, is the benefit which, in their opinion, would result from having the right to flow the land of the petitionees to the extent fixed, appertain to the petitioner in his private business, instead of to the petitionees in theirs. This benefit could not accrue from any use the public would have of the flowage or of the mill, but only from the use the petitioner and his successors might make of them.

Then this benefit, such as it is, is not in any way secured to the public, either by the acts of the legislature or the proceedings in the case. The attempt is not to take the property of the petitionees for the petitioner, for a grist-mill to be held by him and his successors, so long only as they should maintain and operate the grist-mill, but it is to take the right, in the words of the acts, for the petitioner, his heirs and assigns forever, without any express limitation, and without any implied limitation, except that probably the use would be confined to the purposes for which the taking could under the acts be had; that is, for a water-mill or manufactory, and the uses to which it could be put within that restriction, might be for the public benefit in the opinion of the commissioners and court, and might not.

The taking attempted by these proceedings would seem upon these views to be a taking of the property of the petitionees for the use of the petitioner, and not of the public.

Acts of the legislature of Massachusetts quite similar to these have been a long time in operation there, and the validity of them seems never to have been much questioned at any time, and seems to have been directly recognized at other times. This consideration on account of the great learning and astuteness of the bar, and ability and uprightness of the courts there, would have great weight in determining the validity of these acts if there was not anything material in relation to the question applicable to those acts, and not equally applicable to these. But those acts were adopted there by the provincial legislature, while that body probably had all the power that the British Parliament would have had over like subjects, and long before there was any State constitution there. The power of that legislature was not limited in this respect by any written constitution, and under the circumstances under which the laws were passed, the validity of them could not probably well be questioned, and was probably recognized by all. When the State constitution was adopted there, these laws were in force. That part of the constitution of that State, relating to this subject, was embodied in Art. X. of part first, which part treats of the rights of the people and the purposes of government. That article commences by declaring that each in-

dividual has a right to be protected by government " in the enjoyment of his life, liberty, and property according to standing laws." The provisions in relation to the subserviency of private property to public uses immediately follow this. Those provincial acts were then standing laws, and the constitution may well have been thought by this declaration to have recognized the validity of them, the same as trials by modes other than by jury, in use at the time of the adoption of a constitution, have been held not to be abrogated by provisions in the constitution, guaranteeing the right to trial by that mode. *Plimpton* v. *Somerset*, 33 Vt., 283. In *Boston and Roxbury Mill Corporation* v. *Newman*, 12 Pick., 467, the history of those acts was traced back to their provincial origin, and their validity treated as resting back upon the original foundation of them. The decision in that case, however, did not stand upon the validity of those general acts, but upon that of a special one which created a corporation for the purpose of erecting an extensive dam that would serve for a turnpike road, and at the same time furnish an immense water power near to a great city, where both were much needed, and authorized the taking of private property for those purposes.

In *Williams* v. *School District*, before cited, and before any of these acts were passed in this State, POLAND, J., said of the general flowage acts of Massachusetts, that it seemed to him that they stepped " to the very verge of constitutional limit, if not beyond."

The decision of the majority of the court in *Newcomb* v. *Smith*, 1 Chand. Wis., 71, followed the practice and decisions in Massachusetts, and appears to have been made largely upon their authority. And, of the five judges who composed that court, STOW, Ch. J., and LARABEE, J., dissented, and LARABEE, J., reported a dissenting opinion, that the proceedings were unconstitutional, in which the chief justice concurred. *Thiur* v. *Vorghtlander*, 3 Wis., 461, merely followed *Newcomb* v. *Smith*, without any reported discussion. These cases from Massachusetts and Wisconsin seem to be much relied upon to support these proceedings in this case.

Decisions from Virginia, North Carolina, Kentucky, Tennessee, and Georgia, are sometimes cited in support of the right to take

property in this manner for mills. But in all these States the mills were made public mills, by being required by law to grind for all in due turn for regulated tolls, and in some of them the mills were made public by more explicit provisions. CARR, J., *Crenshaw* v. *Slate River Company*, 6 Randolph, Va., 245 ; *Burgess* v. *Clark*, 13 Iredell, N. C., 109. In Kentucky, when private property was taken for such a mill, the statutes required the mill owner to begin to build the mill within one year, and to complete it within three years, and "afterward continue it in good repair for public use " ; and if destroyed, to rebuild and continue it, or the property taken would revert to the former owner and his heirs. Statute Law of Kentucky, 1834, p. 1215, § 7. *McAfee* v. *Kennedy*, 1 Litt., 92 ; *Shackleford* v. *Coffee*, 4 J. J. Marsh., 40. The statutes of Tennessee provided that every mill which ground for toll should be a public mill ; that the miller should grind according to turn for prescribed tolls, and imposed penalties for violation by millers. Upon the question of the power to take private property for such mills, GREEN, J., in *Harding* v. *Goodlet*, 3 Yerg., 41, said : " The grist-mill is a public mill. The miller is a public servant. He is allowed a compensation for grinding. His duties as a miller are prescribed, and penalties are imposed for a violation of any of these duties," &c. Upon this ground the taking was upheld in that case.

The supreme court of Alabama held, in *Sadler* v. *Langham*, 34 Ala., 311, that the right of eminent domain might be exercised in behalf of mills that ground grain for toll, and were compellable by law to render impartial service for all, but seems to have been of the opinion that it could not be exercised in favor of mills not so compellable. Judge COOLEY, in the opinion of the court in the *People* v. *Township Board*, decided by the supreme court of Michigan, and reported at large in 9 Am. Law Reg. N. S., 487, said that the distinction taken in *Sadler* v. *Langham*, was a very reasonable one.

The petitioner, as has been seen, could not be compelled by law to render any service with his mill for any one but at his own option, consequently, not impartial service for all.

In the course of the same opinion Judge COOLEY also said that

he " did not understand that the right of eminent domain can be exercised on behalf of private parties or corporations, unless the State, in permitting it, reserves to itself a right to supervise and control the use by such regulations as shall ensure to the public the benefit promised thereby, and as shall preclude the purpose which the public had in view in authorizing the appropriation being defeated by partiality, or unreasonably selfish action on the part of those who, only on the ground of public convenience and welfare, have been suffered to make the appropriation."

The legislature in these acts did not reserve to itself any control whatever over the use of the property taken, but left it entirely to the control of the taker.

As to railroads, in respect to the public, all persons have the right to ride, and to have property carried on them in the vehicles of the roads, upon payment of a common charge. As to turnpikes, all persons may pass and carry on them in their own vehicles, upon payment of a common toll. All who have occasion, may use ways laid out to private dwellings or lands. School-houses are instruments of a system that is maintained for all the people of the State. The public, or some essential part of it, has the right to have, and has to some extent the actual use and enjoyment of all these, and the takers of property for them are, in some sense, agents for the State in taking, and trustees for the public in holding the property taken, although they go into the enterprises in some cases merely for private gain.

In this case the public would not take through the petitioner, but the petitioner would take for himself, and the petitioner would not hold as a trustee for the public, but only for himself. It is to be considered that this taking would be for the public benefit, for such is the effect of the finding, but the benefit would not arise out of any use the public would acquire by the taking, but of the better use the petitioner would make than the petitionees would of the property taken.

Upon this comparison of these acts and proceedings with the provisions of the constitution, it seems to be plain that this taking would not be for public use within the meaning of the constitution. All the judges who could sit at the hearing of this cause have

been consulted with upon this question, and concur in this decision of it. This conclusion obviates the question discussed as to trial by jury in this proceeding.

Generally when no jury trial is to be had in a cause, final judgment is rendered in this court, but jurisdiction of this proceeding having been given to the county court at the sessions, and the case not being regularly here, it will be remanded to that court, so that final judgment may be rendered there where it properly should be rendered.

Judgment reversed and cause remanded.