F. F. WOODWARD *vs.* CENTRAL VERMONT RAILWAY COMPANY.

Suffolk.   January 17, 1902. — February 28, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Constitutional Law.   Vermont.*

St. of Vermont, 1900, No. 142, providing that the Central Vermont Railway Company, a corporation created to acquire for reorganization after foreclosure sale the property of the Central Vermont Railroad Company, an insolvent corporation, should pay judgments recovered against the last named company for property destroyed by fire in a certain grain elevator on a certain day, is void under the constitution of Vermont as an attempt to require private property to be applied to a private use.

CONTRACT under St. of Vermont, 1900, No. 142, on a judgment for $3,431.34 obtained by the plaintiff against the Central Vermont Railroad Company, an insolvent corporation, whose

property was acquired by the defendant by purchase and reorganization under statutory authority after foreclosure sale, for grain destroyed by fire on September 9, 1890, in a grain elevator at Ogdensburg, New York, owned and operated by the insolvent corporation, whose negligence caused the fire. Writ in the Supreme Judicial Court dated July 16, 1901.

The case was heard upon agreed facts.

St. of Vermont, 1900, No. 142, on which the plaintiff based his right to recover reads as follows:

"No. 142. An Act to amend No. 159 of the Acts of 1898, entitled an Act to incorporate the Central Vermont Railway Company.

"It is hereby enacted by the General Assembly of the State of Vermont:

"Section 1. In addition to the payments specifically required by section 5 of No. 159 of acts of 1898, to be made by the Central Vermont Railway Company, said company shall pay in full with interest all such judgments as have been or may be recovered against the Central Vermont Railroad Company for loss of property by fire in the grain elevators of said last named corporation at Ogdensburg, September 9, 1890. The said Central Vermont Railway Company shall deliver to the said several judgment creditors its four per cent. gold bonds, at par, in payment of their respective claims, or may pay the same out of its available funds, in money, at its option, and if such payment in bonds or money is not made by July 1, 1901, any of said judgment creditors may have an action against said Central Vermont Railway Company for the recovery of the same, provided such action is brought within three years from the passage of this act.

"Sec. 2. This act shall take effect from its passage."

Section 5 of the act incorporating the Central Vermont Railway Company, referred to, reads as follows:

"Sec. 5. There shall be delivered fifty-five thousand dollars of said bonds, when executed and certified, to D. D. Ranlett, treasurer of the Central Vermont Railroad Company, or if he will not accept the trust then to the Welden National Bank in trust to sell on the open market and pay in full without interest the unpaid claims and notes due from the Central

Vermont Railroad Company for supplies, amounting to the sum of forty-four thousand three hundred and three dollars, as appears by the books of ·the auditor of said company and its receivers. Any funds remaining in the hands of the trustee shall be returned to the company hereby incorporated.   There shall be delivered to said trustee in trust for the settlement in full of the following notes and demands against the Central Vermont Railroad Company, viz.: Nellie P. Hubbard, note, $15,000; Randolph National Bank, note, $5,000; National Bank of Redemption, note, $93,842.10; Welden National Bank, notes, $20,000; Wagner Car Company, for car destroyed, $7,000.

" The following amount of said bonds, viz.: 1. For the Nellie P. Hubbard note, $18,750 par value of said bonds; 2. For the Randolph National Bank note, $5,000 par value of said bonds; 3. For the National Bank of Redemption note, $93,842.10 par value of said bonds; 4. For the Welden National Bank note, $20,000 par value of said bonds; 5. For the Wagner Car Company claim, $7,000 par value of said bonds.   The remainder of the stock and bonds representing the purchase money of said railroads, shall be distributed to the several persons and corporations entitled thereto under the provisions of a certain agreement in writing dated Boston, September 29, 1898, between the executors of J. Gregory Smith's estate, the Grand Trunk Railway Company, the bondholders' committee and others.   And this grant is accepted on the above conditions. Provided further that this company shall pay the instalment due the equipment bondholders under the Webb mortgage $25,000 and interest as of the first of January, A. D. 1899 and the ·interest due upon all the bonds due up to the date of the new bonds provided for in the foregoing agreement in cash and shall exchange new bonds for the equipment bonds, to wit: $350,000, dollar for dollar."

Section 7 provides " This act shall be taken to be a public act and shall be subject to alteration, amendment or repeal, as the public good may require."

*R. M. Morse*, for the plaintiff.

*M. Storey*, for the defendant.

HOLMES, C. J.   This is an action upon a judgment obtained by the plaintiff against the Central Vermont Railroad Company,

a different corporation from the defendant, and upon a Vermont statute, St. 1900, No. 142, requiring the defendant to pay certain judgments of which the plaintiff's was one. The defendant was incorporated for the purpose of taking over the property of the judgment debtor, the Central Vermont Railroad Company, by means of a foreclosure sale. In payment it was authorized to give its own stock and bonds, and the charter provided, expressly and by reference to a preliminary agreement in pursurance of which the charter was obtained, who were to receive the stock and bonds, and in what amounts. The plaintiff was not mentioned or included in the arrangement. Vt. St. 1898, No. 159. The charter however provided that it should be "subject to alterations, amendment or repeal, as the public good may require," and the later statute justifies itself by its title as such an amendment, although in its enacting part it simply adds the requirement of these new payments to those which are in the original act. The defence is that the so-called amendment is contrary to the Constitution of Vermont and of the United States.

We regret very much that the former question at least should not be answered by the Supreme Court of Vermont rather than by ourselves. But as it arises in a suit properly before us we must deal with it to the best of our ability, as our predecessors and the courts of other States have done in similar cases. *Simonds* v. *Simonds*, 103 Mass. 572. *Shoe & Leather National Bank* v. *Wood*, 142 Mass. 563, 568. *Stoddart* v. *Smith*, 5 Binn. 355, 363. *New York Life Ins. Co.* v. *Board of Commissioners*, 106 Fed. Rep. 123.

The statute requires the defendant to pay a sum of money to a stranger, to whom, so far as appears, the defendant was under no previous legal, equitable, or moral obligation. A purchaser at a mortgage sale is not bound to pay creditors of the mortgagor who are less well secured than himself. It does not appear and is not contended, that, when the charter was granted, there was even an intention on the part of any one that the defendant should pay judgments like the present. It rather may be said to appear that there was no such intention, so far as any expression can be found in the documents. Such an intention cannot be presumed, because one purpose

of a foreclosure is to withdraw property from the reach of creditors of the mortgagor who have inferior liens or none. In short, we cannot deal with the act as correcting a mistake and carrying out the understanding on which the defendant was called into being, and therefore uphold it upon the somewhat swampy ground of *Danforth* v. *Groton Water Co.* 178 Mass. 472.

The statute is an attempt to require private property to be applied to a private use, and therefore encounters those provisions of the Vermont constitution which declare the right to possess property, and, by making express provisions for compensation, etc., " whenever any person's property is taken for the use of the public," implicitly prohibit the taking of it for uses not public. Vt. Const. c. 1, arts. 1, 2 and 9. *Williams* v. *School District No. 6*, 33 Vt. 271. *Tyler* v. *Beacher*, 44 Vt. 648, 651. *Quimby* v. *Hazen*, 54 Vt. 132, 140. *Snow* v. *Sandgate*, 66 Vt. 451. *Talbot* v. *Hudson*, 16 Gray, 417, 421. We presume that these provisions would not be limited by construction to cases where the statute identified the specific property taken, but would apply equally where the act required some property to be appropriated to the specified use. Indeed, as in this case the appropriation is to be in · the form of money, the further question is raised whether even if the use were public the taking of property in that form is within the power of the State. *Cary Library* v. *Bliss*, 151 Mass. 364, 378, 379.

It follows that the statute is void unless it is saved by the reservation of the power to amend the charter in the original act. We are of opinion that it is not saved. No doubt under a general reservation of such power amendments have been held valid which directly affected the property of a corporation by cutting down the tolls which the charter allowed it to charge, or by increasing the share of profits which the charter required it to pay over to another institution. *Parker* v. *Metropolitan Railroad*, 109 Mass. 506. *Massachusetts General Hospital* v. *State Mutual Life Assurance Co.* 4 Gray, 227, 234. But cases like these are in the strictest and most literal sense amendments of the charter, and do not lead to the conclusion that the power to take away property rights is unlimited. The contrary proposition of Chief Justice Shaw now is accepted by most courts as

elementary law. An unqualified power to amend authorizes a modification of the franchise conferred, but does not authorize a departure from the general restrictions on legislation with regard to property acquired and owned by the company, by the device of inserting a confiscation clause in the charter by way of amendment. *Commonwealth* v. *Essex Co.* 13 Gray, 239, 253. *Sinking-Fund Cases*, 99 U. S. 700, 720, 741, 748, 758. *Detroit* v. *Detroit & Howell Plank Road Co.* 43 Mich. 140, 147. *People* v. *O'Brien*, 111 N. Y. 1. *Dow* v. *Northern Railroad*, 67 N. H. 1. See *Attorney General* v. *Old Colony Railroad*, 160 Mass. 62.

The so-called amendment would not have fallen within the power of the Legislature had the power to amend the charter been general. But the power reserved is qualified by the words " as the public good may require," and this qualification presents a further objection to the act. We agree that every reasonable presumption is to be made in favor of the validity of the act, and that there are cases where the payment of public money to an individual not legally entitled to it may serve a public end. But we cannot invent fictions to save acts of the Legislature. We are unable to see how the public good can be said to require that the defendant should be compelled to pay another person's debt.

*Judgment for defendant.*