## OPINIONS OF THE JUSTICES.

### Opinion of the Justices to the House of Representatives.

*Constitutional Law,* Due process of law.  *Statute,* Retroactive statute. *Insurance,* Motor vehicle liability insurance.

A proposed act requiring companies which had issued compulsory motor vehicle liability insurance policies or bonds and had been paid premium surcharges by owners of motor vehicles as a consequence of the imposition of demerit "points" under the highway safety act, c. 90A of the General Laws, inserted by St. 1953, c. 570, § 1, to refund such surcharges to the owners would take away property of the companies and bestow it upon private persons without compensation and for a purpose not public in violation of arts. 10 and 12 of the Declaration of Rights of the Constitution of Massachusetts and of the Fourteenth Amendment to the Constitution of the United States.

On May 28, 1956, the Justices submitted the following answer to a question propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question set forth in an order adopted by the House on May 7, 1956, and transmitted to us on May 9.

The order refers to a bill known as House, No. 2505 now pending before the General Court and entitled "An Act relative to the refund of surcharges under the highway safety act," and reads as follows:

"There shall be refunded to all owners of motor vehicles who shall have had assessed to them and paid a surcharge on demerit points under the provisions of chapter ninety A of the General Laws, all money paid upon either repeal or changes of said act, or shall be declared unconstitutional by judicial determination."

The question set forth in the order is this: "Is it constitutionally competent for the General Court to enact a law

requiring the refund to owners of motor vehicles of such sums as were paid thereby as a surcharge on compulsory motor vehicle liability insurance based upon the assessment of demerit points under the provisions of chapter ninety A, substantially as set forth in said House, No. 2505."

The highway safety act is c. 90A of the General Laws, inserted by St. 1953, c. 570, § 1. It took effect June 30, 1953. It contains seventeen sections, and without going into unnecessary detail it provides, among other things, for the establishment and administration by the registrar of motor vehicles of a "point system" by which individual owners and operators are to have charged against their records "points" evaluated according to a "graduated scale" based upon the seriousness of reportable delinquencies on their part. § 5. There is to be established "a schedule of the penalties to be imposed as a consequence of the accumulation of points charged against the operating records" of owners and operators. §§ 6, 7. These "penalties" become operative by way of "surcharges" upon the premiums to be paid by owners upon motor vehicle liability policies or bonds becoming effective or having anniversary dates subsequent to December 31, 1955, and are based upon the total number of points charged against the record of an owner during a previous period of approximately four years, or that portion thereof during which the point system has been in effect. § 14. The commissioner of insurance in establishing classifications of risks and premium charges as required by c. 175, § 113B, must give consideration to the points charged against owners and is required to fix "a schedule of premium surcharges or penalties to be applied to premium charges" and to be "graduated according to the point accumulation records" of the owners. Surcharges are to be in money, and in establishing premium charges in accordance with § 113B the commissioner is to "give consideration to the additional premiums developed by the application of such premium surcharges or penalties in each zone." § 15.

We are not entirely clear as to the construction to be

placed upon the proposed act.   There may be doubt whether the word "repeal" in line 5 refers to a repeal of any part of the highway safety act or only to the repeal of the act as a whole.   Does the word "changes" in the same line refer to any change in the highway safety act or only to such changes as relate to the surcharges?   Do the words "repeal or changes" refer only to repeal or changes made after the passage of the proposed act?   As a matter of fact several changes have already been made in the highway safety act. St. 1954, c. 425.   St. 1955, c. 417.   St. 1956, c. 178.   None of these acts directly affects surcharges.   But St. 1956, c. 51, passed as an emergency law and approved February 8, 1956, repealed §§ 12, 13, 14, 15, and 17 and amended § 16 of the highway safety act, thereby doing away with the surcharges altogether, and St. 1956, c. 201, also an emergency law, repealed § 11, which provided for the recording on each license to operate of the points charged against the operating record of the licensee.   So far as we are aware no further changes have been made in the highway safety act down to the time of writing this opinion.

There may also be doubt about the meaning of the expression "or shall be declared unconstitutional by judicial determination."   Does this refer to a judicial determination that the entire act is unconstitutional or to a judicial determination that any part of it is unconstitutional?

It seems proper further to advert to the fact that in fixing the premium charges for 1956 the commissioner of insurance has presumably not only added the surcharges to premiums of persons chargeable with points but has also given consideration under the now repealed § 15 to the additional premiums so "developed" in fixing the premium charges of persons not chargeable with points.   The proposed act seeks to provide refunds to persons who have been surcharged, but makes no provision for readjustment of the premiums of those whose premiums have been reduced because of the surcharges upon others.

We do not attempt to resolve the difficulties in interpretation which would result from the passage now of the pro-

posed act in view of the amendments and repeals that have already taken place, because we are of opinion that in any event the proposed act is an attempt to create by subsequent legislative fiat a right to a return of the surcharges previously paid. It is a proper legislative function to create new rights prospectively arising from future events, but it is not a proper legislative function to create new substantive rights retrospectively based wholly upon past events. In *Mulligan* v. *Hilton*, 305 Mass. 5, at page 10, we said, "A statute cannot constitutionally impose an obligation with respect to a transaction that at the time it took place gave rise to no obligation," citing *Woodward* v. *Central Vermont Railway*, 180 Mass. 599, *Campbell* v. *Boston*, 290 Mass. 427, *Forbes Pioneer Boat Line* v. *Commissioners of Everglades Drainage District*, 258 U. S. 338, and other cases, to which we would now add *Hanscom* v. *Malden & Melrose Gas Light Co*. 220 Mass. 1, 7, *Wasser* v. *Congregation Agudath Sholom of Chelsea*, 262 Mass. 235, *Bernhardt* v. *Atlantic Finance Corp*. 311 Mass. 183, 190–191, and *Greenaway's Case*, 319 Mass. 121, 123. When the surcharges were paid to the insurance and bonding companies the money became the property of the companies and part of their assets. No right to a return of the money then existed, unless indeed we are to assume that the original statute imposing the surcharges was itself unconstitutional, and that the surcharges were illegally exacted in the first place. Except on that assumption, to create a right to a refund now, as proposed, would be to take away property of the companies and bestow it upon private persons without compensation and for a purpose not public. It would be in violation of arts. 10 and 12 of the Declaration of Rights of this Commonwealth and of the Fourteenth Amendment to the Constitution of the United States. It would not fall within the narrow exception where it has been held that a statute may grant relief in favor of persons who have good causes of action but who have been caught upon some purely technical snag as in *Danforth* v. *Groton Water Co*. 178 Mass. 472, *Dunbar* v. *Boston & Providence Railroad*, 181 Mass. 383, and *Segal* v.

*Switzer*, 305 Mass. 27. The first of these cases was referred to in *Woodward* v. *Central Vermont Railway*, 180 Mass. 599, at page 603, as resting "upon . . . somewhat swampy ground." Even if the statute imposing the surcharge was unconstitutional, which we do not intend to imply, we do not see that the matter stands differently. If the surcharges were unlawfully exacted in such circumstances that the persons paying them would have rights to recover them back, they could resort to the courts for relief. Their proper forum would be in the judicial branch of the government. There would be no room for legislatively created causes of action arising out of past occurrences.

In resting this opinion on the ground herein taken we do not overlook the possibility that the proposed act might be unconstitutional on the further ground that it would be a law impairing the obligation of contracts in violation of art. 1, § 10, of the Constitution of the United States. In the early case of *Fletcher* v. *Peck*, 6 Cranch, 87, 136–139, the Supreme Court of the United States held that this clause applied to an executed contract as well as to an executory one. *Coolidge* v. *Long*, 282 U. S. 582, 595. *Wood* v. *Lovett*, 313 U. S. 362, 368–369. See *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, 427–430, including note, page 429; *Adams* v. *Plunkett*, 274 Mass. 453; *Opinion of the Justices*, 300 Mass. 607, 612–613.

We answer the question "No."

<div style="text-align: right;">

STANLEY E. QUA.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, JR.
ARTHUR E. WHITTEMORE.