DEERFIELD RIVER COMPANY v. WILMINGTON POWER AND PAPER
COMPANY.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 10, 1910.

*Equity—Hearing on Bill and Answer—Effect of Answer—
Eminent Domain—"Public Use"—Necessity and Test—
Furnishing Municipalities with Electricity for Street Light-
ing—Condemnation of Flowage Rights and Rights of Way.*

Where a suit in equity is heard on bill and answer, all facts that are
well pleaded in the answer are to be taken as true, and, if they
constitute a defence, the bill must be dismissed.

A valid grant of the power of eminent domain can be made only when
the taking is for a public use within the meaning of the Constitu-
tion.

Our law governing the exercise of the power of eminent domain sharply
distinguishes between "public use" and "public benefit," and pro-
hibits the taking of private property for a mere public benefit.

The end to be accomplished is the ultimate test of whether a con-
templated exercise of the power of eminent domain is for a public
use; and it is wholly immaterial whether the actuating motive of
the enterprise is private gain, or whether the title or control of
the property taken is vested in a natural or in an artificial person.

Where, by the exercise of the right of eminent domain, a corporation
seeks to take property solely for a public use, its right to condemn
for that use is not affected by the fact that its charter powers also
embrace matters of mere private concern.

Although it is essential to a valid exercise of the power of eminent
domain that the necessity for the taking and the conditions that
make the use a public one must then exist, it is not necessary that
a corporation shall have completed its dam, electric power plant, and
transmission line before it can condemn flowage rights and rights
of way necessary to the generation of electricity for a public use.

It is not necessary to the public use essential to a valid exercise of the
power of eminent domain that the whole public, or any considerable

portion thereof, participate in that use; for such public use may be, and frequently is, limited to a small locality.

The furnishing of electricity to municipalities to light their streets and public buildings is a "public use" for which the power of eminent domain may properly be granted and exercised.

APPEAL IN CHANCERY.   Heard on bill and answer at the April Term, 1910, Windham County, *Miles,* Chancellor.   Decree, *pro forma,* dismissing the bill. .The orator appealed.   The opinion states the case.

*Batchelder & Bates* for the orator.

Section 4 of the defendant's charter is objectionable in that it purports to give general authority for the taking of land under the right of eminent domain, regardless of how much, if any, is needed for the then public use.   It does not make the extent of the taking dependent upon the extent of the public use to which it is to be applied.   A statute which permits land to be taken without reference to its then present necessity for public use, is unconstitutional; for it is fundamental that the conditions which made the use a public one must exist at the time of the taking. *Avery* v. *Vermont Electric Co.,* 75 Vt. 235.   There is absolutely nothing that binds the defendant to serve the general public. That this is fatal to the right this section purports to give, is held in *Tyler* v. *Beacher,* 44 Vt. 648.

The argument that because the power of eminent, domain has been granted, the corporation is therefore bound by its acceptance of the charter to serve the entire public within reach of its lines, is unsound.   *Brown* v. *Gerald,* 100 Me. 351, 70 L. R. A. 472; *Fallsburgh Power & Mfg. Co.* v. *Alexander,* 101 Va. 98, 61 L. R. A. 129.   The fact that the development of power from Deerfield River may be of public benefit, does not make the use a public one.   *Arnsperger* v. *Crawford,* 101 Md. 247, 70 L. R. A. 497; *Re Niagara Falls etc. Co.,* 108 N. Y. 375; *Wisconsin River Imp. Co.* v. *Pier,* 118 N. W. 857.

*Clarke C. Fitts* and *Hale K. Darling* for the defendant.

Where the use is a public one, the Legislature has full power to determine whether sufficient necessity exists to justify granting

the right to take. *Williams* v. *School Dist.*, 23 Vt. 271. But it is equally well settled that the legislative determination as to what is a public use is not conclusive, and that the question is ultimately a judicial one. *Tyler* v. *Beacher*, 44 Vt. 648; *Stearns* v. *Barre*, 73 Vt. 281.

The use here sought to be subserved is manifestly a public one. *Town of Swanton* v. *Village of Highgate*, 81 Vt. 152. In every case, the objects to be accomplished, rather than the instruments for attaining them, must be the test; and it is wholly immaterial that the control of the property is vested in private persons who are actuated solely by motives of private gain, or that private benefits will incidentally accrue from the condemnation, nor is it essential that the whole public, or any considerable portion of it, participate in the proposed use. 1 Lewis Em. Dom. (3rd ed.) §§253, 254; *Spratt* v. *Helena Trans. Co.*, 37 Mont. 60, 8 L. R. A. (N. S.) 567, 94 Pac. 631; *Ryan* v. *Terminal Co.*, 102 Tenn. 111, 45 L. R. A. 303; *Sisson* v. *Board of Supervisors*, 128 Iowa 442, 70 L. R. A. 440; *Walker* v. *Shasta Power Co.*, 87 C. C. A. 660, 160 Fed. 856, 19 L. R. A. (N. S.) 725; *Brown* v. *Gerald*, 100 Me. 351, 70 L. R. A. 472; *Ulmer* v. *Lime Rock R. Co.*, 98 Me. 579, 57 Atl. 1001; *Jacobs* v. *Clearview Water Supply Co.*, 220 Pa. St. 388, 69 Atl. 870; *Attorney General* v. *Williams*, 174 Mass. 476.

Although our law sharply distinguishes between "public use" and "public benefit," holding the latter inadequate, *Tyler* v. *Beacher*, 44 Vt. 648; *In re Barre Water Co.* 62 Vt. 27; *Avery* v. *Vt. Electric Co.*, 75 Vt. 235, the opinion in the Swanton case, *supra*, shows that the use here in question is a public one.

By the great weight of authority the furnishing of electricity for domestic heating and lighting alone is a public use. 1 Lewis Eminent Domain (3rd ed.), §268; *Rockingham L. & P. Co.* v. *Hobbs*, 72 N. H. 531, 66 L. R. A. 581; *Avery* v. *Vermont Electric Company*, 75 Vt. 235, 59 L. R. A. 817; *Jones* v. *No. Georgia Elec. Co.*, 125 Ga. 618, 6 L. R. A. (N. S.) 122.

POWERS, J. This is an appeal from a *pro forma* decree of the court of chancery dismissing the bill. The orator seeks to enjoin the defendant from proceeding before commissioners who have been duly appointed by two judges of this Court under §4 of No. 318, Acts of 1908, to determine the necessity for the

taking by the defendant of the right to flow certain lands of the orator and the right to erect and maintain a transmission line across the same, and the damages to be paid therefor. Both parties are corporations. The orator owns certain lands in Readsboro. The defendant, by the section of its charter above referred to, is empowered to condemn, when necessary, land and rights of way and of flowage, under a scheme therein provided for the determination of the questions of necessity and damages. The third section of this charter provides that the defendant shall, if requested, furnish certain municipalities electric current with which to light streets, highways and public buildings and for other municipal use, and for domestic lighting and heating, in preference to any other demands for current; it also provides a way of fixing the terms of such service in the county court in case the parties cannot agree.

The village of Readsboro, which belongs to that class of municipalities specified in said charter, is lawfully authorized to light its now unlighted streets and highways and to enter into contracts therefor, and has requested the defendant to furnish it electricity for that purpose, agreeable to said charter provision. Such lighting is desirable and necessary and the only reasonable and feasible way in which the defendant can comply with this request and meet the requirements of its charter in this behalf is by erecting such a dam on Deerfield River as will set back the water over the orator's said land, and by the erection and maintenance of a pole line across the same. For these purposes the defendant has instituted, and proposes to follow up pursuant to the terms of its charter, the condemnation proceedings herein sought to be enjoined.

The foregoing facts appear from the admissions and allegations of the defendant's answer. The hearing in the court of chancery was on bill and answer, and there being no suggestion that the foregoing facts were not well pleaded in the answer, they must be taken to be true; and if they constitute a defence, the bill must be dismissed. *Dyer* v. *Dean,* 69 Vt. 370. The orator challenges the constitutionality of the provision referred to on the ground that the taking therein authorized is not for a public, but a private use—asserting that the public use involved, if any, is merely incidental.

All agree that a valid grant of the power of eminent domain can, under our decisions, be made only when the taking is for a public purpose within the meaning of the Constitution.    This is according to the last word of this Court on the subject.    *Avery* v. *Vt. Elec. Co.,* 75 Vt. 235.    Though others take a more liberal view, we draw a sharp line of distinction between public use and public benefit—guarding the private right of ownership against the exercise of the power of eminent domain for public benefit as distinguished from public use.

We recently held in *Swanton* v. *Highgate,* 81 Vt. 152, that an electric light plant, maintained by a municipality under charter authority to light its streets and public places, was de- voted to a public use within the meaning of the statute exempting property so devoted from taxation, saying: ''We have no doubt that that use is a public use within the meaning of the statute, for it is distinctively a public service as it benefits the people, conserves the public peace, and protects both persons and property, for darkness invites disorder and encourages crime.''    This language is as pertinent here as there, and by adopting it as determinative of the character of the use here involved we are supported by the authorities—even those that take as restricted a view óf the matter as we do.    So while it is held in Washington that the generation and sale of electricity to the general public, though on equal terms, is not a public use for which the power of eminent domain may be exercised—*State, ex rel. Harris* v. *Superior Court,* (Wash.) 5 L. R. A. (N. S.) 672—it is also there held that the generation and transmission of electric current for municipal lighting is for a public use.    *State, ex rel. Dominick* v. *Superior Court,* (Wash.) 21 L. R. A. (N. S.) 448.

And in Virginia, where it is held to be beyond the constitutional authority of the Legislature to confer upon an individual or corporation the right of eminent domain to acquire a site for a plant to generate power, light and heat for general sale— *Fallsburgh Power & Manufacturing Co.* v. *Alexander,* 101 Va. 98, 99 Am. St. Rep. 855—it is held that condemnation by a town to enable it to furnish light to its inhabitants is for a public use. *Miller* v. *Pulaski,* (Va.) 63 S. E. 880.

And in *Brown* v. *Gerald,* (Me.) 70 L. R. A. 472, wherein it was held that the generation and distribution of electricity for power for manufacturing enterprises was not a public use which

would justify an exercise of the power of eminent domain—distinguishing public use from public benefit and public welfare—it was said: ''We repeat that we think that no one would now deny that electric lighting for the public is a public use and that a corporation engaged in that business may properly be granted the right of eminent domain for that use.''

The end to be accomplished must always be the true and ultimate test; and it is quite immaterial that the title and control of the property taken are vested in a private person or corporation, whose actuating motive is private gain. *State, ex rel. Dominick* v. *Superior Court, supra; Ryan* v. *Terminal Co.,* 102 Tenn. 111, 45 L. R. A. 303; *Whitman's Exrx.* v. *Wilmington etc. R. Co.,* 2 Har. (Del.) 514, 33 Am. Dec. 411; *Willyard* v. *Hamilton,* 7 Oh. (p. II) 111, 30 Am. Dec. 195; *Bloodgood* v. *Mohawk etc. R. Co.,* 18 Wend. 9, 31 Am. Dec. 313; *Brown* v. *Beatty,* 34 Miss. 227, 69 Am. Dec. 389; *Valley City Salt Co.* v. *Brown,* 7 W. Va. 191; *Bardstown etc. R. Co.* v. *Metcalf,* 4 Met. (Ky.) 199, 81 Am. Dec. 541.

And, as this case is presented, the only use for which the defendant seeks to condemn this land being a public one, the mere fact that its charter powers also embrace matters of private use will not deprive it of this right of condemnation for the public use. *Walker* v. *Shasta Power Co.,* 87 C. C. A. 660, 19 L. R. A. (N. S.) 725; *Lake Koen etc. Co.* v. *Klien,* 63 Kan. 484; *Brown* v. *Gerald,* (Me.) 70 L. R. A. 472.

There is no force in the orator's suggestion that the condemnation proceedings are premature. To be sure the necessity for the taking and the conditions which make the use a public one must then exist; but the law does not require that the defendant first complete its dam, its power plant, and its transmission line, in whole or in part, before it can assert its right to condemn flowage rights and rights of way.

Nor can we endorse the orator's other suggestion that the use specified is private because the general public cannot avail themselves of it. It is not necessary to a public use that the whole public or any considerable portion of it participate in it; the use may be, and frequently is, limited to a small locality and yet be public in a constitutional sense. *Williams* v. *School Dist.,* 33 Vt. 271.

Interesting questions regarding the future rights and relations of these parties suggest themselves, but with them we have nothing now to do. Throughout this discussion we have dealt only with the case made by the pleadings; and, confining ourselves to the very point involved, we hold that the purpose of the defendant to proceed according to its charter to furnish to the village of Readsboro, agreeably to its request, electric current with which to light its streets and public places, involves a public use within the meaning of the Constitution, and the right of eminent domain granted the defendant therefor is a valid delegation of authority to proceed before the commissioners according to the purpose set forth in the answer.

*Affirmed and remanded.*