W. H. FRAZIER *v.* WILLIAM H. SLACK & BRO. ET AL.

April Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 10, 1911.

*Taxation—Exemption   Statutes—Construction—Property   Subject*
*to General Taxation—Railroad Property—Valuation—Evidence*
*—Presumptions—Performance of Statutory Duty by Listers.*

Statutes exempting from taxation should be strictly construed.

A statute classifying property for taxation. and designed to secure the direct production of State revenue, is presumed to be advantageous to the State, and should be liberally construed.

Under P. S. 706, 707, 797, providing for the taxation of property acquired, constructed, or used for railroad purposes, and declaring that real and personal estate so used shall not be listed in the grand list, property leased to an electric railroad company for 99 years, and used exclusively in its business and in the operation of its road, which is partly within and partly without the State, is not subject to general taxation, though the company may under the lease use the property for other than railroad purposes, and though it does not appear that it is not intended so to use the property in the future.

The authority of the listers to make a taxpayer's list, under P. S. 561, by doubling the ascertained value of his property, exists only where the failure of the taxpayer to return an inventory or answer an interrogatory is wilful, but where such failure is not wilful, the listers should complete such list in the ordinary way as provided in P. S. 547, 555.

In the absence of any finding on the subject, it will be presumed that the lister, in adopting the quadrennial appraisal in ascertaining the value for taxation of a taxpayer's property on his failure to include it in his inventory, found that his failure so to include it was not wilful, and so that the right to double the ascertained value of the property, under P. S. 561, did not exist.

ASSUMPSIT begun by trustee process for the collection of taxes. Plea, the general issue. Trial by court on an agreed statement of facts at the December Term, 1909, Windsor County, *Miles,* J., presiding. Judgment, *pro forma,* for the plaintiff. The defendant excepted. The opinion states the case.

*Herbert H. Blanchard, Herbert G. Tupper* and *Edward B. Flinn* for the defendant.

Property leased as this was to the railway company becomes a part of its corporation property for the purposes of taxation. *Huck et al.* v. *Chicago & Alton R. R. Co.*, 86 Ill. 352; *Baltimore & Ohio R. R. Co.* v. *Walker*, 45 Ohio St. Rep. 577. Different agencies may be employed by the State in the assessment and equalization of taxes imposed on different classes of corporations. Thus the manner of assessing the property of a railway by a different instrumentality than that employed to assess other property is authorized. *Vt. and Canada R. Co.* v. *Vt. Central R. Co.*, 63 Vt. 1; *State* v. *Rutland R. Co.*, 81 Vt. 508; *State* v. *C. V. R. Co.*, 81 Vt. 508, 27 Am. & Eng. Enc. of Law, 925.

*Fred C. Davis* and *Edward R. Buck* for the plaintiff.

MUNSON, J.   The plaintiff sues as collector of the town of Springfield to recover taxes assessed against the defendants on the list of 1908, on property leased by the defendants to the Springfield Electric railway company for ninety-nine years, which is claimed to have been exempt from general taxation as property belonging to said railway company and acquired and used for railroad business and purposes. P. S. §§706, 707, 797.

The property in question is set in the list in two parcels; designated as "power house, lot and building," and "house lot and building." The defendants concede that the dwelling-house is taxable if properly listed. It is agreed that the property described as power house, lot and building has been used "for developing and furnishing power, light and heat by the Springfield Electric railway company in operating its railroad, and in and about its railroad business, and for no other purpose."

The plaintiff does not question but that this is property which "belongs" to the railway company within the meaning of the statute. His claim is that the words "used for railroad business or purposes" ought not to be construed to include it. He likens the water power and its accessories to the wood lots or coal mines which furnish the fuel which produces the steam

that affords the motive power of a steam railway; and supports his claim by a reference to *Vermont Central Railroad Co.* v. *Burlington*, 28 Vt. 193, where the Court distinguished between land which the company was authorized to take as essential to the exercise of its franchise and land purchased for convenience or profit, and held that the latter was taxable. It is not necessary to inquire as to the justness of the comparison drawn by the plaintiff. In the case cited there was a charter exemption from all taxation, and it is well settled that exemptions from taxation are to be strictly construed. *In Re Hickok's Est.*, 78 Vt. 259, 62 Atl. 724; *Ford* v. *Delta etc. Land Co.*, 164 U. S. 662, 41 L. ed. 590, 17 Sup. Ct. 230. Here there is no exemption from taxation, but a classification for the purposes of taxation. A classification made to secure the direct production of a State revenue is presumed to be advantageous to the State, and the same reason which is held to require a strict construction in one case would suggest a liberal construction in the other.

The lease to the railway company authorizes the use of the power for other than railroad purposes, and it is claimed that the defence fails because it does not appear but that the company intends to put it to other uses in the future. This claim apparently results from the plaintiff's theory that the property subjected to the special tax is only such as might have been taken under the right of eminent domain. But the law of eminent domain is not the criterion in matters of taxation. *Stiles* v. *Newport*, 76 Vt. 154, 56 Atl. 662. It was within the power of the Legislature to withdraw this property from general taxation, whether acquired by condemnation or purchase, and even if incapable of acquirement by condemnation. It has in terms withdrawn "all property acquired, constructed or used for railroad business or purposes." It is not necessary for the defendants to negative an intention of the railway company to use the property at some future time for the other purposes mentioned in its lease. It was in fact used exclusively in the operation and business of the road at the time of the appraisal by the State officials, and this is sufficient. See *Deerfield River Co.* v. *Wilmington etc. Co.*, 83 Vt. 548, 77 Atl. 862. As to the objection that the entire property is withdrawn from

general taxation when for aught that appears but a trifling part of it may be in use, it is enough to say that the Legislature has not made the complete utilization of the property for railroad purposes the test of the classification.

The railroad served by this power is partly within the State and partly without; and in view of this fact the plaintiff seeks to bring the case within the rule given in *Swanton Village* v. *Highgate*, 81 Vt. 152, 69 Atl. 667, 16 L. R. A. (N. S.) 867, that when property is put to a mixed use, part of which affords a basis of taxation and part not, and there is no way of separating the parts, the whole is taxable. But the cases are dissimilar in every feature, only one of which need be noticed. The statute imposing this special tax expressly provides a method for determining the value of the property upon the basis of its use in this State.

The statement presenting the case says it is agreed that all the proceedings in making up the grand list were regular, except that the defendants and the railway company claim that the action of the town officials in appraising and setting this property in the list was in violation of P. S. 797. This is the section which provides that the property of corporations which are subject to this special tax shall not be set in the grand list nor stated in the inventories returned to the listers. But the agreed statement shows that, although this property was not returned in the defendants' inventory, its valuation was determined, not by doubling its real value, but by reference to the quadrennial appraisal. Counsel argue this matter without raising any question as to the construction of the agreed statement, and we treat the point regarding the method of determining the valuation as before us.

The statute directs how the list shall be made when an inventory is properly filled out and returned. P. S. 547, 555. It provides for doubling an ascertained value when a person wilfully omits to make, swear to and deliver an inventory, or to answer any interrogatory therein. P. S. 561. It does not specifically direct what shall be done when no inventory, is returned or an interrogatory is left unanswered, and the listers are satisfied that the failure to return or to answer was not wilful. But inasmuch as the statute gives no right to double unless the

failure to return or to answer is wilful, it is clear that cases where the failure is not wilful are to be treated as within the first class; for unless this is done there will be no taxation of the property, and an intention to reach this result is certainly not to be presumed.   In the absence of any finding on the subject it is to be presumed that the listers were mindful of their duty, and did not adopt the quadrennial valuation without finding that the failure to include this property in the proper answer was not wilful.

*Judgment affirmed.*