2005 VT 22

**Jesse CRAVEN and Deborah Paradis v. Charles McCRILLIS**

[868 A.2d 740]

No. 04-157

¶ 1. February 4, 2005. Appellant Deborah Paradis, grandmother of Cheyenne McCrillis, appeals from a family court's order dismissing her petition for visitation with Cheyenne and denying her motion for relief from judgment. We affirm the family court's decision because Paradis failed to rebut the presumption of validity attached to father's decision to deny grandparent visitation.

¶ 2. Cheyenne is the child of defendant Charles McCrillis and his ex-wife, Jesse Craven. The final divorce stipulation and order granted Craven sole physical rights and responsibilities and shared legal responsibility for the child. Craven died from an illness in 2003. After Craven's death, father assumed sole physical and legal rights for the child. Although Paradis had a close relationship with the child, father decided not to let her visit with Cheyenne.

¶ 3. Paradis filed an action for grandparent visitation pursuant to 15 V.S.A. § 1012. Her petition alleged that she had a very close relationship with the child, father was aware that she did not approve of how he had treated Craven, and he had not allowed her or any of Craven's family contact with the child. Father moved to dismiss the petition, arguing that *Glidden v. Conley*, 2003 VT 12, 175 Vt. 111, 820 A.2d 197, controlled and required Paradis to rebut the presumption of validity that attached to his decision. Father argued that in order to rebut this presumption Paradis had to offer evidence of parental unfitness or prove that substantial harm to the child would occur if the court did not grant Paradis

visitation, and that she failed to produce such evidence. The court permitted Paradis to present witnesses in order to establish a prima facie case and decided to treat father's motion to dismiss as a motion for summary judgment.

¶ 4. At the hearing on her petition, Paradis presented two witnesses and testified herself. Paradis testified to the following: (1) the child had witnessed an argument between father and his sister while father was intoxicated; (2) the child told her that she did not want to live with father; and (3) father physically abused Cheyenne's mother. The child's aunt testified that at the Tunbridge Fair the child was unclean and appeared more mellow than she had in the past. The aunt also recalled that at one point in time she heard father threaten to "blister [the child's] butt if she didn't be quiet." The third witness was Craven's best friend. She testified that when she saw Cheyenne at a Fourth of July parade, the child indicated that she was "bored" at home because father did not allow her to play with people in her neighborhood. She also testified that at one point the child did not seem as happy on the phone as she had in the past.

¶ 5. Based on this testimony, the court concluded that, assuming all the testimony presented was true, "it does not constitute sufficient evidence to demonstrate that the father is either unfit or that the Court should not defer to the presumption that he's acting in the best interest of the child, even if we might make a different decision than he made." The court dismissed the petition for grandparent visitation and denied Paradis's motion for relief from judgment. Paradis appealed.

¶ 6. Although the court treated father's motion as a motion for summary judgment, the motion was more akin to a motion for judgment as matter of law under V.R.C.P. 50 because the trial court took evidence and made factual findings.

If evidence exists that may fairly and reasonably support all elements of the nonmoving party's claim, judgment as a matter of law is improper. We view the evidence in the light most favorable to the nonmoving party, excluding the effects of any modifying evidence. *Gero v. J.W.J. Realty*, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000).

¶ 7. Paradis argues that father's decision to deny grandparent visitation is not entitled to a presumption of validity because father is an unfit parent. In defining what "unfit" means, Paradis argues that she is not required to prove that father's behavior met the level of abuse to terminate his parental rights. Rather, she argues that in determining whether father was a fit parent, the court must consider that a custodial parent has a legal obligation to foster a relationship with a grandparent if it is in the best interests of the child. Paradis's attorney stated at trial that father's behavior does not rise to the level necessary to terminate his parental rights or to establish abuse or neglect.

¶ 8. Paradis also argues, in passing, that the court denied her the opportunity to present expert testimony. Her argument on this point consists solely of the following sentences: (1) "The Court further declined to permit the Grandmother an opportunity to submit expert testimony on the issue of harm to the child," and "[t]he trial court ... denied her the opportunity to obtain expert testimony to support a finding of substantial harm to the child." A passing reference constitutes inadequate briefing and thus we do not address this issue. *State v. Cameron*, 163 Vt. 626, 626, 658 A.2d 939, 940 (1995) (mem.); see *Johnson v. Johnson*, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n* (1992) (refusing to consider inadequately briefed issues).

¶ 9. The family court may award visitation rights to a grandparent if the court finds that to do so would be in the best

interest of the child. 15 V.S.A. § 1011(a). When evaluating the best interest of the child, a presumption of validity attaches to the parent's decision concerning grandparent visitation. *Glidden*, 2003 VT 12, ¶ 21. To rebut this presumption, a grandparent must "provid[e] evidence of compelling circumstances to justify judicial interference with the parent's visitation decision." *Id.* Circumstances satisfying this high burden include proving parental unfitness or that significant harm to the child will result in the absence of a visitation order. *Id.* As we explained in *Glidden*, although a grandparent may have a close relationship with the child such that the child might benefit from contact with the grandparent, and the parent may deny such contact for no good reason, these are not "the kind of compelling circumstances contemplated by . . . this decision." *Id.*

¶ 10. In order to establish parental unfitness, the grandparent must prove that the parent's actions or the failure to grant grandparent visitation will "cause the child significant harm by adversely affecting the child's health, safety, or welfare." *Id.* (quotations omitted). This standard is similar to the standard for establishing abuse and neglect as set forth in 33 V.S.A. § 4912(2): "An 'abused or neglected child' means a child whose physical health, psychological growth and development or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent . . . ." We have set this high standard to "minimize[] the risk that a court will substitute its judgment for that of the parent simply because the court disagrees with the parent's decision." *Glidden*, 2003 VT 12, ¶ 21.

¶ 11. *Glidden* requires Paradis to meet this high standard, which she has failed to do. Paradis failed to present any expert testimony proving that father's decision to refuse her visitation with Cheyenne creates a substantial risk of harm to the child. Paradis presented only evidence indicating that father may be a "bad" parent. Courts are not at liberty to substitute their judgment for that of a bad parent; we can substitute our judgment only for that of an unfit parent. Presenting evidence of a child's boredom, unhappiness, and sometimes unclean condition do not amount to evidence that father's actions and decisions are adversely affecting the child's health, safety, and welfare. Even evidence of father's one-time threat to hit the child does not rise to the level of child abuse sufficient to warrant judicial interference with his decision-making. Moreover, Paradis presented evidence that while father was married to Craven, he physically abused her. However, she failed to make the connection between the alleged physical abuse to Craven and how that adversely affects the child's health, safety, and welfare today.

¶ 12. On these facts we are not permitted to substitute our judgment for that of a fit parent. Accepting Paradis's facts as true, she has not established that father is an unfit parent. Therefore, we affirm the family court's dismissal of Paradis's petition.

*Affirmed.*